THE LUSTIGMAN FIRM, P.C.
149 Madison Avenue, Suite 805
New York, New York 10016
Phone: (212) 683-9180
Fax:  (212) 683-9181
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SANTO RIGATUSO a/k/a SANTO GOLD,

       Plaintiff,

  - against -

SANTI WHITE a/k/a SANTOGOLD,
DOWNTOWN MUSIC, L.L.C.,
MAD DECENT RECORDS,
WESLEY PENTZ a/k/a DIPLO,
 LIZARD KING RECORDS, INC.,
and LIZARD KING RECORDS, LTD.,

       Defendants.

------------------------------------------------------------x

Civil Action No. 08-cv-05475-RJS

**AMENDED COMPLAINT
AND JURY DEMAND**

   Plaintiff Santo Rigatuso a/k/a Santo Gold (hereinafter "Plaintiff"), by and through the

undersigned attorneys, The Lustigman Firm, P.C., as and for his Complaint alleges as follows,

based upon knowledge with respect to his own actions and upon information and belief with

respect to all other matters:

## NATURE OF THE ACTION

  1.  On her new hit song "Creator", Defendant Santi White adopts the stage name

SANTOGOLD and sings, "The rules I break got me a place / Up on the radar / Me, I'm a Taker /

Know what the stakes are / Can't roll it back, it's understood." True to her lyrics, White has indeed

broken the rules by intentionally stealing the SANTO GOLD trade name and performing identity

away from Plaintiff Santo Rigatuso, whom she well knows has appeared as SANTO GOLD for

decades as a singer and actor, on television and in movies. Defendant White's published and recorded interviews confirm her full awareness of Plaintiff's prior use of the SANTO GOLD mark. Defendant White has further revealed her intent to deliberately confuse the public with her involvement in and/or association with the unauthorized use of Plaintiff's recorded voice on her latest commercial recording, titled "Top Ranking SantoGold" in such a way that makes it appear that SANTO GOLD (Plaintiff) is introducing SANTOGOLD (Defendant White).

2. Performing under the name and mark SANTO GOLD since 1983, Plaintiff Santo Rigatuso has earned a cult following for his unique, and sometimes bizarre songs, movies and infomercial appearances. After appearing for several years in the music industry under her own name with mixed success, Defendant White reinvented her professional identity by switching musical genres and deliberately misappropriating Plaintiff's SANTO GOLD mark and name and using it in the very same industry in which Plaintiff operates.

3. Defendant White has hijacked Plaintiff's SANTO GOLD Mark, identity and voice without written consent and has otherwise impermissibly traded on Plaintiff's name recognition. She has accomplished this with the help of defendants Downtown Music, L.L.C., Lizard King Records, Inc., Lizard King Records Ltd. (jointly referred to as "Lizard King") and Mad Decent Records (collectively "the Record Label Defendants") and, Wesley Pentz a/k/a Diplo ("Pentz").

4. Defendants White, Lizard King and Downtown all received notice of Plaintiff's rights before releasing and distributing White's first compact disc ("CD"), but rather than simply stopping the infringement and identifying Defendant White by her given name (or any non-infringing name for that matter), Defendants expanded their use of SANTOGOLD as White's identity by releasing

two CDs in 2008 and by appearing in and scheduling a worldwide concert tour, including appearances as the opening act for the popular group Coldplay, and also on her own tour.

5.      The true nature of Defendant's bad faith and malicious intent to confuse the public and injure Plaintiff's career was confirmed on or about July 7, 2008 when, after this lawsuit was commenced, Defendants Pentz and White, purloined a sampled recording of Plaintiff uttering the words, "Now ladies and gentlemen, we proudly present in person SANTO GOLD!" and, without Plaintiff's permission, used his voice as the introduction to Defendant White's second CD thus making it appear that Plaintiff is enthusiastically endorsing Defendant White. In reality, Plaintiff was talking about himself, but any listener would assume he intended to introduce Santi White to the public.

6.      Defendant White has advertised and performed in public as SANTOGOLD, registered several SANTOGOLD Internet domain names (save for santogold.com which already belonged to Plaintiff); and licensed the SANTOGOLD name and her music to commercials for national products such as Bud Light Beer and Converse sneakers. Defendant White furthered her scheme to steal the SANTO GOLD name from Plaintiff by submitting false statements to the United States Patent and Trademark Office in hopes of registering Plaintiff's name as a trademark. With Defendant Pentz producing her music, and the Record Label Defendants orchestrating an international publicity campaign on Defendant White's behalf, Defendants have confused consumers and industry critics and are in the process of crushing Plaintiff's hopes of continuing under the identity he has used for years. Defendants must be stopped.

7.      Accordingly, Plaintiff brings this action seeking, *inter alia*, the Court's determination, order and judgment that Defendants have: violated Plaintiff's rights under federal unfair competition law codified at § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); violated Plaintiff's rights under the

anti-cybersquatting provisions the Lanham Act, 15 U.S.C. § 1125(d); infringed Plaintiff's trademark rights under the common law of New York; violated Plaintiff's rights under the unfair competition law of New York; used Plaintiff's mark with the intent to deceive in violation of New York General Business Law §133; used Plaintiff's voice and name in violation of his right of privacy under New York Civil Rights Law Sections 50, 51; and violated Plaintiff's rights under New York General Business Law § 360-l.

8.      Defendants' tortious acts have caused and continue to cause irreparable damage and injury to Plaintiff for which there is no adequate remedy at law.  Accordingly, Plaintiff seeks the following relief: an injunction barring Defendants use of the SANTO GOLD mark or anything substantially similar (including SANTOGOLD); refusal of Defendant White's pending application for SANTOGOLD with the USPTO; recall and destruction of all Defendants' items in commerce that either infringe on the SANTO GOLD Mark or impermissibly use Plaintiff's voice; compensatory damages; Defendants' profits, treble damages, attorneys' fees and other appropriate relief as set forth more fully below.

## PARTIES, JURISDICTION AND VENUE

9.      Plaintiff Santo Rigatuso is a resident of the State of Florida.  For decades, he has performed as a singer and actor appearing on television, in movies and has recorded music using the stage name SANTO GOLD.  Since the early 1980s, Plaintiff has continually used in commerce the distinctive name and trademark SANTO GOLD ("Plaintiff's Mark" or "SANTO GOLD Mark"). Since 2004, Plaintiff has operated the website www.santogold.com where products and services utilizing the SANTO GOLD Mark are offered.

10.      Defendant Santi White is a resident of Brooklyn, New York. She performs concerts in New York, New York and elsewhere recently as SANTOGOLD and she otherwise

- 4 -

relies on SANTOGOLD to further her career.  She is subject to personal jurisdiction in New York by virtue of her residence here, and also by virtue of her professional appearances in this district as SANTOGOLD.   In April 2008, Defendant White released her first CD under the name SANTOGOLD. In July 2008, also under the name SANTOGOLD, Defendant Pentz and Mad Decent released  the second CD, with the title "Top Ranking SantoGold" displayed in large bold letters on the cover. "Top Ranking SantoGold is a "mixtape" that features her own work along with those of other artists.

11.    Upon information and belief, Defendant Downtown Records, L.L.C. maintains an office at 485 Broadway, New York, New York.

12.    Upon information and belief, Defendant Lizard King Records, Inc. is a Delaware corporation with its principal place of business in New York, New York.

13.    Upon information and belief, Defendant Lizard King Records Ltd. is incorporated in the United Kingdom, but does business in this country and in this district through its subsidiary, defendant Lizard King Records, Inc.

14.    Upon information and belief, Mad Decent Records ("Mad Decent") is located at 531 N. 12th Street in Philadelphia, PA.

15.    Upon information and belief, Defendant Wesley Pentz a/k/a Diplo ("Pentz") lives in Philadelphia, Pennsylvania and is an executive and the driving creative force behind Mad Decent.

16.    Upon information and belief, Defendant Pentz is subject to personal jurisdiction in New York by virtue of his frequent performances in New York, his derivation of significant revenues from sales of his recorded music to residents of New York, and also by the acts of Mad Decent.

17.    Upon information and belief, Defendant Pentz is an owner or part owner of Defendant Mad Decent Records and has committed and/or is responsible for the acts of Defendant Mad Decent Records as described herein. Upon information and belief, Defendant Mad Decent is subject to personal jurisdiction in New York by virtue of its derivation of significant revenues from sales of recorded music to residents of New York.

18.    Upon information and belief, Defendant Record Labels regularly do and transact business in this district, by, *inter alia*, advertising, promoting and selling music, including Defendant White's music, in this district, and to residents of this district including through Internet downloads, in the case of Lizard King, Inc. and Downtown Records, by maintaining offices in this district, and in the case of Lizard King Ltd., by acting through its subsidiary.

19.    Upon information and belief, Defendants have committed tortious acts within this district, including but not limited to: infringing on the SANTO GOLD Mark and competing unfairly with Plaintiff in this district by advertising, promoting and selling Defendant White's product and services, through White's performances, interviews and public performances and appearances using the infringing name SANTOGOLD and by selling CDs here containing Plaintiff's voice and trade name without authorization to do so.

20.    Upon information and belief, Defendants derive significant revenue from interstate and international commerce.

21.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. §1121, 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.  This Court may grant Plaintiff's requested relief pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and pursuant to the relevant common law and the general laws of the State of New York.

22.    This Court has supplemental jurisdiction over the remaining causes of action, which arise from a common nucleus of operative facts that provide federal jurisdiction.

23.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, *inter alia,* (i) Defendants reside in this district pursuant to 28 U.S.C. § 1391(c); and (ii) a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

### Plaintiff's Prior Use Of SANTO GOLD

24.    Plaintiff Santo Rigatuso a/k/a Santo Gold is a singer, songwriter and performer who, under the SANTO GOLD Mark, has performed on television and in motion pictures for his musical creations and has recorded music for over twenty five years. His products are available at the website under his domain name www.santogold.com, which he has operated since 2004.

25.    At least as far back as 1983, Plaintiff appeared in national television and cable commercials using the SANTO GOLD Mark. Through Plaintiff's continuous and extensive use of the SANTO GOLD Mark in interstate commerce, he has acquired common law rights to that name and mark.

26.    For example, in 1984, Santo Rigatuso wrote and recorded a song entitled "The Santo Gold Song" and released "The Santo Gold Song", a record on which he performed in SANTO GOLD persona.

27.    Over the next two decades and continuing to this day, as highlighted below, Plaintiff appeared and performed live singing "The Santo Gold Song" and has offered for sale songs utilizing the SANTO GOLD Mark.

-7-

28.     In 1985, Plaintiff produced and appeared in the motion picture "Blood Circus." In this motion picture, Plaintiff appeared under the persona and name SANTO GOLD and performed "The Santo Gold Song."

29.     In 1985, Plaintiff also created a thirty-minute infomercial in which he performed "The Santo Gold Song" and showed scenes from his movie, "Blood Circus". Plaintiff created the infomercial to sell jewelry and to promote both the movie and his musical career.

30.     Related videos entitled "Behind the Scenes of Blood Circus" and "The Making of Blood Circus" were later produced which also featured SANTO GOLD singing and performing.

31.     Additionally, Plaintiff and his family launched a national television shopping network titled "Auction on the Air Network," which ran on cable television and which featured Santo Rigatuso hosting, singing and performing using his SANTO GOLD persona.

32.     In 1986, Santo Rigatuso attended the Cannes Film Festival in his SANTO GOLD character and also was requested to perform live on national television and in a major professional wrestling event as SANTO GOLD .

33.     In 1987, Plaintiff produced a follow-up movie, using actual footage from "Blood Circus", entitled "Blood Slam", which again featured himself as SANTO GOLD singing and performing. "Blood Circus" was shown in New York and Baltimore theatres and also was presented and screened by major motion picture studios in California.

34.     For several years, Plaintiff continued to appear as SANTO GOLD through the broadcast of the SANTO GOLD infomercial on television.

35.     Plaintiff has continued his use of the SANTO GOLD Mark in interstate commerce since 1999. The URL, or Internet address, for Plaintiff's website, www.santogold.com, was

purchased in 2001. Plaintiff has utilized this website since it was launched in 2004 to promote his SANTO GOLD persona and to distribute his music and other products nationwide.

36.     Many websites have posted information and reference to Plaintiff's performances, all of which have been under the name SANTO GOLD.

37.     In 2004, Plaintiff, under the name SANTO GOLD, recorded the song "Your Fired" and offered it for sale on the Internet.

38.     Since 2004 Plaintiff has received and responded to commercial inquiries on his website, www.santogold.com.

39.     Since 2004, portions of Plaintiff's SANTO GOLD films have been broadcast on the Internet. Videos of Plaintiff performing as SANTO GOLD have been posted on the popular Internet site www.youtube.com since at least 2006.

40.     In 2005 Plaintiff offered for sale his movie, "The Making of Blood Circus Part 1", which features SANTO GOLD singing "The Santo Gold Song", on the www.santogold.com website.

41.     The foregoing activities have resulted in the SANTO GOLD Mark becoming associated with Plaintiff Santo Rigatuso's goods, services and persona.

**Defendants' Willful Infringement Actions and Unfair Competition**

42.     The fundamental purpose of both Plaintiff's SANTO GOLD and Defendants' SANTOGOLD ventures is to provide music and performance-related entertainment.

43.     Some time in the 1980s or 1990s, as evidenced by her own admissions, Defendant White became aware of Plaintiff, his SANTO GOLD Mark, and his SANTO GOLD persona.

44.     In a video interview available for Internet viewing, Defendant White was asked why she adopted the SANTO GOLD name:

-9-

Interviewer: Santogold, what is that?

Defendant White: It's actually a nickname that I had since I was a kid. There's this cheap infomercial for like this cheap gold jewelry. You ever seen that? It was in the eighties and it was like, "Santo Gold Santo Gold" [singing the Santo Gold song] and it was like he was selling this weird wrestling movie, he was selling these gold earrings and he had one song. It was one infomercial.

*See* http://stylecartel.wordpress.com/2008/07/01/dj-enuff-of-hot-97-santogold-interview/.

45.     Also, in an interview published on www.trashmanagerie.com, Defendant White was asked about Plaintiff and she admitted she adopted the SANTOGOLD name because she like to wear jewelry similar to the jewelry Plaintiff wore on his television appearances.

46.     On or about November 15, 2006, without giving any notice to Plaintiff, Defendant White filed (or caused to be filed) with the USPTO an application regarding her intent to use Plaintiff's SANTO GOLD Mark.

47.     In the USPTO application documents, Defendant White's attorney, Scott Mason, signed a declaration attesting that "to the best of his/her belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive, and that all statements made of his/her own knowledge are true. . ."

48.     Upon information and belief, Mason's sworn representations, made on behalf of and as an authorized agent for Defendant White to the USPTO, were knowingly false.

49.     According to Defendant White's Statement Of Use filed with the USPTO, the first use of the SANTOGOLD name was made on April 22, 2007.

50.     In late Fall 2007, Plaintiff learned of Defendant White's trademark application, but only after it was too late to file an objection with the USPTO.

- 10 -

51.    Upon learning of White's trademark application, Plaintiff contacted White's attorney, a man named Mason, concerning the application and notified him of his objection to Defendants' use of the SANTO GOLD Mark, that confusion was virtually certain to result from Defendants' use such mark.  Plaintiff requested that White cease and desist from any and all uses of the SANTO GOLD Mark.  These concerns and cease and desist requests were set forth in two *pro se* letters to Attorney Mason, dated November 23 and November 28, 2007, respectively.

52.    Plaintiff's *pro se* efforts were ignored and Defendant White continued with the trademark application process.

53.    Plaintiff then retained counsel and, by his counsel, sent another letter to Attorney Mason, on April 1, 2008, requesting that White cease and desist from infringing on the SANTO GOLD Mark.

54.    Despite having been fully informed about Plaintiff's objection to Defendant White's infringement on the SANTO GOLD Mark, Defendant White did not inform the USPTO of Mr. Rigatuso's prior use of the SANTO GOLD Mark.

55.    On April 29, 2008, after Defendant White was notified that her use of SANTOGOLD infringed on the SANTO GOLD Mark, she publicly appeared and performed, on national television, billing herself as SANTOGOLD.

56.    Despite having been notified of their infringement, in April 2008, Defendant White and the Record Label Defendants (except for Defendant Mad Decent Records) released the "Santogold" CD.

57.    When Plaintiff learned that the Santogold CD had been released, he again wrote to White on May 1, 2008, with copies sent to the Record Label Defendants, demanding that she cease and desist her infringing use of Plaintiff's Mark.

- 11 -

58.    Although White's attorney admitted his client's prior knowledge of Plaintiff's SANTO GOLD mark, and that he advised and discussed same with her, she rejected Plaintiff's demands to cease utilization of the SANTO GOLD Mark.

59.    Defendants' use of Plaintiff's SANTO GOLD Mark has continued to grow. Defendants have dramatically intensified their promotional efforts for the "Santogold" CD and Defendant White's public appearances as SANTOGOLD have increased.

60.    On or about September 3, 2008, Defendant White announced her own United States tour, in which she headlines as SANTOGOLD.

61.    Defendants have unlawfully profited from the use of Defendant White's music in television commercials for Bud Light beer, Converse sneakers, and Ford Motor, utilizing the SANTOGOLD name in connection therewith.

62.    Defendants' infringement continues unabated.  Defendants continue to sell her CDs in major chain stores and on Internet websites, make her music available for purchase via Internet downloads, ringtones and profit from the licensing of her music for commercials and through live performances as "SANTOGOLD."

63.    Defendants' adoption and use of the name and SANTO GOLD Mark were commenced with the bad faith intent to trade upon the public persona of Plaintiff and his SANTO GOLD Mark and to falsely and deceptively suggest a connection to or affiliation with the Plaintiff.

64.    Proof of Defendants' bad faith lies in their activities since the commencement of this action.

65.    Defendants continue to progressively encroach on SANTO GOLD's market territory by creating and airing <u>after this lawsuit was commenced</u> television and Internet

- 12 -

commercials for a non-existent "SANTOGOLD THE MOVIE" and causing them to be broadcast on national cable television and on the Internet. See www.mtv.com/overdrive/?vid=251890.

66.     On or about July 7, 2008, again after this lawsuit was commenced, Defendants White and Pentz incorporated Plaintiff's voice as the first selection on Defendant White's second CD "Top Ranking Santo Gold."

67.     Without any authorization, Defendant Pentz obtained and used on White's second CD a recording of Plaintiff's voice uttering the words "Now ladies and gentlemen, we proudly present in person SANTO GOLD!" Upon information and belief, Defendant Pentz obtained the recording from a website on which he left a message identifying himself under his stage name, Diplo. Upon information and belief, Defendants all benefit from the commercial use and sales of the Top Ranking Santo Gold CD.

68.     Without any authorization, Defendant Pentz and Mad Decent used the recording of Plaintiff's voice in a manner that intentionally confuses the public by making it appear that Plaintiff is introducing and endorsing Defendant White, when in reality Plaintiff was talking about himself.

69.     Defendants Mad Decent Records and Pentz began selling and distributing the "Top Ranking Santo Gold" CD, with the uncredited, unauthorized appearance of Plaintiff on or about July 7, 2008.

70.     The SANTOGOLD name being used by Defendants and the SANTO GOLD Mark being used by Plaintiff are confusingly similar, and are identical, save for the removal of the space between the names Santo and Gold. Plaintiff also uses his SANTO GOLD mark as one word on occasion, such as in connection with the domain name on his website. Additionally,

- 13 -

websites referencing Defendant White have interchangeably used the SANTO GOLD Mark with and without the space between Santo and Gold.

**Plaintiff Is Being Irreparably Harmed**

71.     The public is likely to be confused and, in fact, has already been confused as to the source of the entertainment offered in connection with the name and mark SANTO GOLD.

72.     Such confusion and mistake irreparably harm Plaintiff and his ability to continue his career using the SANTO GOLD persona. As a result of the initial interest confusion and mistake engendered by Defendants, potential purchasers and interested consumers are either diverted from Plaintiff to Defendant White or are led to believe that Plaintiff is infringing on Defendant White's success as SANTOGOLD.

73.     Actual confusion already has resulted from Defendants' use of the SANTO GOLD Mark, including Plaintiff's receipt of requests for interviews of Defendant White and to license the use her songs.

74.     Defendants harmed Plaintiff by intentionally confusing the public through the phony ads for a motion picture under the banner "SANTOGOLD THE MOVIE" and also by the unauthorized use of Plaintiff's voice in a manner that suggests Plaintiff's endorsement of Defendant White's infringement.

75.     Plaintiff has been preparing to re-release his original "Blood Circus" movie, as "Santo Gold's, Blood Circus," on pay-per-view, video and DVD, featuring SANTO GOLD singing and performing.

76.     Before Defendant White began using Plaintiff's SANTO GOLD Mark, a search for SANTO GOLD on the popular internet search engine Google, returned numerous results relating to Plaintiff and his SANTOGOLD products and performances. Since White has

- 14 -

commenced her unauthorized use of Plaintiff's name, his presence on the Internet has become hopelessly entangled and confused with Defendant White..

77.    Plaintiff will continue to be irreparably harmed as long as Defendants continue to use the name, mark or Internet domain featuring SANTOGOLD in connection with music and video entertainment.

### Count I - False Designation of Origin
### (against all defendants)
### (Violation of § 43(a) of the Lanham Act, 15 U.S.C. 1125(a))

78.    Plaintiff re-alleges all prior paragraphs as though set forth in full herein.

79.    Defendants' use of SANTOGOLD constitutes false designation of origin in interstate commerce.

80.    Such use has caused and will continue to cause confusion, mistake and/or deception as to the affiliation, connection, or association of Defendants and/or their services with Plaintiff and/or his services.

81.    As a result of Defendants' use of SANTOGOLD, the public is likely to falsely believe that Defendant White and her services and commercial activities, including those offered by the Record Label Defendants originate with or are sponsored, approved, endorsed or licensed by, or are in some other way associated or connected with Plaintiff or his activities conducted under his SANTO GOLD Mark when in fact they are not.

82.    Defendants' use of SANTOGOLD is likely to confuse the public as to the true source of Plaintiff's and Defendants' competing goods.

83.    Defendants' acts complained of herein constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

- 15 -

84. By taking an uncredited sound recording of Plaintiff's voice introducing "Santo Gold" and placing it on the "Top Ranking Santogold" CD in a manner that makes it appear that Plaintiff is introducing Defendant White to the public, Defendants White, Pentz and Mad Decent Records have palmed off Plaintiff's performances as that of Defendant White's.

85. Defendants' acts complained of herein, which upon information and belief have been done willfully and with the intention to cause confusion, mistake and deception, have caused and will continue to cause irreparable injury and damage to Plaintiff's ability to sell his music and movies and his public persona in the future. As a result of this confusion and mistake, potential purchasers or users are diverted from Plaintiff to Defendants.

86. Plaintiff is entitled to an injunction barring Defendants from continuing to utilize the name or mark SANTO GOLD, and any version thereof.

87. Unless enjoined, Defendants will continue to cause irreparable injury and damage to Plaintiff for which Plaintiff has no adequate remedy at law.

88. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a), because Defendants' conduct has been outrageous and their violation of Plaintiff's rights has been willful.

89. Upon information and belief, by the acts complained of herein, Defendant has derived substantial revenues and/or profits to which in equity they are not entitled to retain.

90. As a result of the Defendants' acts, Plaintiff is entitled to damages in an amount to be proven at trial, which amount should be trebled in accordance with 15 U.S.C. § 1117(a).

91. The foregoing acts of Defendants also warrant an award of attorneys' fees.

### Count II – Cybersquatting
### (against Defendant White)
### (Violation of § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d))

92. Plaintiff re-alleges all prior paragraphs as though set forth in full herein.

93.     Defendant White, with full knowledge of Plaintiff's SANTO GOLD mark and intent to capitalize thereupon, registered, trafficked in and/or used the domain names www.santogold.net, www.santogold.info and www.santogold.us, and possibly other infringing domain names.

94.     Upon information and belief, at the time Defendant White registered this trio of websites, she viewed or attempted to reserve www.santogold.com and saw Plaintiff's SANTO GOLD website but proceeded to register similar domain names with full knowledge that it would result in confusion of the public.

95.     Plaintiff's domain name registrations were done in bad faith in order to diminish Plaintiff's association with the SANTO GOLD Mark.

96.     Upon information and belief, Defendant White has a bad faith intent to profit from the use of Plaintiff's Mark, and has registered, trafficked in, and/or used the domain names, www.santogold.net, www.santogold.us and www.santogold.info, which are confusingly similar to Plaintiff's Mark, including his website www.santogold.com.

97.     Plaintiff's Mark is distinctive and was distinctive at the time of the registration, trafficking and/or use of www.santogold.net, www.santogold.us and www.santogold.info. Defendant White has no valid trademark or other intellectual property or other rights to any name or mark featuring SANTO GOLD.

98.     Upon information and belief, the use of the domain names www.santogold.net, www.santogold.us and www.santogold.info was and is done with the intent to benefit from confusion with Plaintiff and Plaintiff's Mark.

99.     The acts set forth above constitute cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

100.    The acts of cybersquatting complained of herein, which upon information and belief have been done willfully and with the intention to cause confusion, deception and mistake, have caused and will continue to cause irreparable injury and damage to Plaintiff, and unless enjoined will continue to cause irreparable injury and damage for which Plaintiff has no adequate remedy at law.

101.    For this violation of Section 43(a) of the Lanham Act, Plaintiff is entitled to injunctive, monetary and other relief pursuant to Sections 34, 35 and 43(d) of the Lanham Act, 15 U.S.C. §§ 1116, 1117 and 1125(d), including the forfeiture, cancellation or transfer to Plaintiff of any Santogold-related domain names held, registered or used by Defendant White or her licensees or assigns as well as treble damages and attorneys' fees.

### Count III - Common Law Trademark Infringement
**(against all Defendants)**
**(Violation of New York Trademark Infringement Law)**

102.    Plaintiff re-alleges all prior paragraphs as though set forth in full herein.

103.    Defendants' use of the name and mark SANTOGOLD in the State of New York, capitalizes upon and is intended to capitalize upon the recognition and name value of Plaintiff's SANTO GOLD persona and mark.

104.    As a result of Defendants' use of the name and mark SANTOGOLD, actual consumer and trade confusion is likely between Plaintiff and Defendant and their respective services.

105.    Thus, Defendants' use of the name and mark SANTOGOLD constitutes trademark infringement under the common law of the State of New York.

106.    Defendants' acts of trademark infringement complained of herein, which upon information and belief have been done willfully and with the intention to cause confusion,

- 18 -

mistake and deception, have caused and will continue to cause irreparable injury to Plaintiff and damage to his ability to sell his music and movies and his public persona in the future.

107. Unless enjoined, Defendants will continue to cause irreparable injury and damage to Plaintiff for which Plaintiff has no adequate remedy at law.

108. Plaintiff is entitled to injunctive, monetary and other relief pursuant to the common law of New York.

**Count IV - Common Law Unfair Competition**
**(against all Defendants)**
**(Violation of New York Unfair Competition Law)**

109. Plaintiff re-alleges all prior paragraphs as though set forth in full herein.

110. Defendants have misappropriated Plaintiff's distinctive SANTO GOLD mark.

111. Defendants' bad faith use of the name and mark SANTOGOLD capitalizes upon and is intended to capitalize upon the goodwill and reputation of Plaintiff and Plaintiff's Mark, including his labor and expenditures in connection therewith.

112. Defendants' use of the name and mark SANTOGOLD complained of above usurps, dilutes and otherwise injures and prejudices Plaintiff by exploiting, without authorization, the recognition and name value associated with Plaintiff's Mark, thus constituting unfair competition under the common law of the State of New York.

113. Defendants' acts of unfair competition complained of herein, which upon information and belief have been done willfully, have caused and will continue to cause irreparable injury and damage to Plaintiff and his ability to sell his music and movies and his public persona in the future.

114. Unless enjoined, Defendants will continue to cause irreparable injury and damage to Plaintiff for which Plaintiff has no adequate remedy at law.

115.    Plaintiff is entitled to injunctive, monetary and other relief pursuant to the common law of New York.

## Count V - Use of Name With Intent to Deceive
### (against all Defendants)
### (Violation of Section 133 of the General Business Laws of New York)

116.    Plaintiff re-alleges all prior paragraphs as though set forth in full herein.

117.    As described above, Defendants are using, for purposes of advertising, trade and commercial advantage the name and designation SANTOGOLD, which will deceive and mislead the public as to Defendant White's identity and as to Defendants' lack of any connection to Plaintiff.

118.    Defendants' use of the name and designation SANTOGOLD is a violation of Section 133 of the New York General Business Law and such use has caused and will continue to cause irreparable injury and damage to Plaintiff and his ability to sell his music and movies and his public persona in the future.

119.    Unless enjoined, Defendants will continue to cause irreparable injury and damage for which Plaintiff has no adequate remedy at law.

120.    The use and continued use by Defendants of any name or mark featuring SANTO GOLD or SANTOGOLD, or any similar mark, is deceptive, misleading and illegal and is without the authority or consent of Plaintiff.

121.    Plaintiff is entitled to injunctive relief prohibiting further violation of Section 133 of the General Business Law of New York, as well as monetary relief in an amount to be determined at trial.

## Count VI – Right of Privacy/Publicity
### (against all Defendants)
### (Violation of New York Civil Rights Law Sections 50, 51)

122.    Plaintiff re-alleges all prior paragraphs as though set forth in full herein.

123.    Defendants' use of the name SANTOGOLD, including the Record Label Defendants' use of such name on the cover over Defendant White's two CDs, constitutes the use of Plaintiff's name for advertising purposes and/or for the purposes of trade without Plaintiff's prior written consent in violation of N.Y. Civil Rights Law §§ 50 and 51.

124.    By reason of Defendants' actions, Plaintiff has sustained and will continue to sustain injury, loss and damage, including to his ability to sell his music and movies and his public persona in the future.

125.    Unless Defendants are restrained from continuing such conduct, Plaintiff will suffer irreparable injury.  Plaintiff has no adequate remedy at law for these injuries.  Moreover, unless Defendants are restrained by this Court from continuing to use the SANTOGOLD name in connection with Defendant White's album sales and performances, these injuries will continue to occur.

126.    Defendants' violation of N.Y. Civil Rights Law §§ 50 and 51 entitles Plaintiff to injunctive relief, as well as damages in an amount to be proven at trial.

127.    Such use by Defendants of Plaintiff's name was done knowingly, justifying an additional award of exemplary damages against Defendants.

### Count VII – Right of Privacy/Publicity
### (against all Defendants Pentz and Mad Decent)
### (Violation of New York Civil Rights Law Sections 50, 51)

128.    Plaintiff re-alleges all prior paragraphs as though set forth in full herein.

129.    The unauthorized use by Defendants Pentz and Mad Decent of Plaintiff's voice on the "Top Ranking Santo Gold" CD for the purposes of trade is a violation of N.Y. Civil Rights Law §§ 50 and 51.

130.    The unauthorized use of Plaintiff's voice is confusing the public into believing that Plaintiff endorses or is somehow affiliated with Defendant White and her music.

131.    Defendants' violation of N.Y. Civil Rights Law §§ 50 and 51 entitles Plaintiff to injunctive relief, including recall, destruction and a ban on all sales by Defendants of any recordings of Plaintiff's voice or music, as well as damages in an amount to be proven at trial.

132.    Such use by Defendants of Plaintiff's name was done knowingly, justifying an additional award of exemplary damages against Defendants.

### Count VIII - (Violation of N.Y. General Business Law  § 360-*l*) (against all Defendants)

133.    Plaintiff re-alleges all prior paragraphs as though set forth in full herein.

134.    Plaintiff is the owner of the distinctive SANTO GOLD name and mark.

135.    SANTO GOLD functions as a business name or mark by which Plaintiff and his film, music and television work are well-known.

136.    Defendants' use of the name SANTOGOLD in connection with the sale of music her performances and her ad campaign for a non-existent "SANTOGOLD THE MOVIE" misappropriates Plaintiff's name and is injuring to his ability to market his music, movies and his public persona in the future in violation of N.Y. General Business Law §360-*l*.

137.    By reason of Defendants' actions, Plaintiff is entitled to injunctive relief and such other relief permitted by law.

**WHEREFORE**, Plaintiff requests the Court for judgment and an Order as follows:

A.    Enjoining Defendants and their officers, agents, servants, employees, and attorneys, and all others acting in active concert or participation therewith who receive actual notice, from using as or as part of any trademark, service mark, trade name, company name, corporate name, domain name or other indicia of origin the names SANTO GOLD,

- 22 -

SANTOGOLD or any other trademark, service mark, trade name, company name, corporate name, domain name or other indicia of origin that includes the terms SANTO GOLD, SANTOGOLD or is confusingly similar thereto;

B.      Directing Defendants to provide an accounting of all revenues and profits derived from its activity under the name or mark SANTOGOLD or any other name, mark or domain name that includes the words SANTO GOLD;

C.      Directing the forfeiture, cancellation or transfer to Plaintiff of any SANTOGOLD-related domain names held, registered or used by Defendants or their licensees or assigns;

D.      Directing the USPTO to refuse of Defendant White's pending trademark application for the Santogold name;

E.      Directing the recall, destruction and ordering a ban on all sales by Defendants of any unauthorized recordings containing Plaintiff's voice or music;

F.      Awarding Plaintiff: (i) Defendants' profits arising from Defendants' aforementioned infringing or otherwise improper activities; (ii) the damages sustained by Plaintiff as a result of these infringing, unfair, deceptive or other activities in violation of federal or state law, which damages should be trebled by reason of Defendants' willfulness; and (iii) the costs in association with this action, as this Court may determine to be fair and appropriate pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

G.      Declaring that Defendants' willful acts of infringement, unfair competition and deception, make this an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) and awarding to Plaintiff treble damages and its reasonable attorneys' fees;

H.      Awarding Plaintiff exemplary damages in an amount to be determined at trial; and

- 23 -

I.     Awarding to Plaintiff such other and further relief as the Court deems just and

proper.

Dated: New York, New York
      September 5, 2008

                    Respectfully submitted,

                    THE LUSTIGMAN FIRM, P.C.

By: _____
                    Andrew B. Lustigman (AL-8209)
                    Scott Shaffer (SS-6560)
                    Jill L. Abitbol (JA-9112)

                    149 Madison Avenue, Suite 805
                    New York, New York 10016
                    Tel: (212) 683-9180
                    Fax: (212) 683.9181

                    Attorneys for Plaintiff

- 24 -

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: New York, New York
       September 5, 2008

Respectfully submitted,

THE LUSTIGMAN FIRM, P.C.

By: _____
    Andrew B. Lustigman (AL-8209)
    Scott Shaffer (SS-6560)
    Jill L. Abitbol (JA-9112)

149 Madison Avenue, Suite 805
New York, New York 10016
Tel: (212) 683-9180
Fax: (212) 683.9181

Attorneys for Plaintiff